UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

**BETTY PEÑA-PEÑA**, on her behalf and on behalf of minor **E.R.P.**

     Plaintiffs

     v.

**JOSE FIGUEROA-SANCHA** in his personal and official capacity as Superintendent of the Puerto Rico Police Department and on behalf the conjugal partnership comprised by him and his spouse; **JOSE ROSA-CARRASQUILLO** in his personal and official capacity as Auxiliary Superintendent and on behalf of the conjugal partnership comprised by him and his spouse; **LEOVIGILDO VASQUEZ** in his personal and official capacity as Auxiliary Superintendent of Field Operations and on behalf of the conjugal partnership comprised by him and his spouse; **HECTOR M. FIGUEROA-TORRES**, in his personal and official capacity as Commanding Officer of the Tactical Operations Unit and on behalf of the conjugal partnership comprised by him and his spouse; **JOHN DOE**, in his personal and official capacity as Commanding Officer of the Specialized Tactical Operations Unit and on behalf of the conjugal partnership comprised by him and his spouse; **MIGUEL MEJIAS-CRUZ** in his personal and official capacity as Regional Director of San Juan and on behalf of the conjugal partnership comprised by him and his spouse; **LUIS A. SÁNCHEZ MENDEZ**, Badge No. 16706, in his personal capacity and official capacity as Police Officer of the Puerto Rico Police Department and on behalf of the conjugal partnership

CIVIL NO. 11-1624 (SEC)

For Civil Rights Violation, Compensatory, Punitive Damages, Declaratory and Injunctive Relief

Plaintiffs Demand Trial by Jury

comprised by him and his spouse; **Defendants Officers 1 thru 5**, in their personal and official capacity, and on behalf of the conjugal partnership comprised by them and their respective spouses; **Defendants Officers 6 thru 10**, in their personal and official capacity and on behalf of the conjugal partnership comprised by them and their respective spouses; **JIM ROE**, in his personal and official capacity;

Defendants

Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example.

Olmstead vs. United States, 277 US 438, 485 (1928) (J. Brandeis, dissent).

**SECOND AMENDED COMPLAINT**

TO THE HONORABLE COURT:

Come now plaintiffs **Betty Peña-Peña and minor E.R.P.** through their undersigned attorneys and very respectfully state, allege and pray as follows:

**I.      NATURE OF THE ACTION AND JURISDICTION**

1.1    This action arises under the Constitution and Laws of the United States and moves particularly under the First, Fourth, Fifth, Tenth and Fourteenth Amendments to the Constitution, and the Civil Rights Act of 1871, 42 USC §1983.

1.2    Jurisdiction is conferred upon this Court by Title 28 USC §§1331, 1334 insofar as plaintiffs' claims present a federal question.   Plaintiffs also claim supplemental jurisdiction over all claims arising under the Constitution of the Commonwealth of Puerto Rico, Article II, Sections 1, 4, 7, 8 and 10, and the Civil Code of Puerto Rico of 1930, Article 1802 et seq., 31 LPRA §5141 et seq. All claims asserted in this complaint arise from a same nucleus of operative facts.

1.3    This Honorable Court is also authorized to order declaratory and injunctive relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

1.4    Venue properly lies in this district since all facts occurred and all claims arose in the Commonwealth of Puerto Rico.

1.5    Plaintiffs demand trial by jury as to all counts and request for relief set forth in the instant complaint.

## II.    THE PARTIES

### A.    Plaintiffs

2.1    Plaintiff Betty Peña-Peña is a citizen of the United States and resident of Caguas, Puerto Rico, a teacher at the Caballero Torres Junior High School in the Municipality of Caguas and community leader. Her address is San Antonio Ward, # 739 k.m. 2.1, Section South of America, Caguas, Puerto Rico.

2.2    E.R.P. is a citizen of the United States, minor and daughter of coplaintiff Betty Peña-Peña, who resides with her mother. E.R.P. has just been admitted to the University of Puerto Rico, Rio Piedras Campus. At all times relevant to this complaint E.R.P. was a high school student.

2.3    Both plaintiffs were seriously injured by codefendant Agent Sánchez-Méndez, identified in photograph **Exhibit A-1,** and by unknown officers 1 thru 10 identified in photograph **Exhibit A-2**.

**B.    Defendants**

2.3    Defendant, Superintendent JOSE FIGUEROA-SANCHA, (herein referred to as Superintendent Figueroa-Sancha) is a citizen of the United States residing in San Juan, Puerto Rico; and at all times pertinent herein, Chief of Police of the Puerto Rico Police Department and acted under color of law.  Superintendent Figueroa-Sancha is sued in his individual and official capacity for the conduct, misconduct, lack of training and supervision, negligence and damages hereinafter asserted and claimed.  As Superintendent, defendant Figueroa-Sancha executes the laws and regulations of the Commonwealth of Puerto Rico pertaining to law enforcement and is also responsible for the adequate training, supervision and discipline of all the employees and officers of the department.  The Superintendent is also responsible for, and makes and executes by himself and through the department's officers and employees, policy decisions regarding training and law enforcement techniques to be employed by the department. On information and belief, Figueroa-Sancha failed in his duty to supervise, evaluate, train, monitor, assign and/or discipline agent Sánchez-Méndez,, and Officers 1 thru 10.

2.4    Defendant JOSE ROSA-CARRASQUILLO, was the Auxiliary Superintendent, sued in his individual and official capacity for the conduct, misconduct, lack of training and supervision, negligence and damages hereinafter asserted and claimed. On information and belief, Rosa-Carrasquillo failed in his duty to supervise, evaluate, train, monitor, assign and/or discipline agent Sánchez-Méndez,, and Officers 1 thru 10.

2.5    Defendant LEOVIGILDO VASQUEZ, is the Auxiliary Superintendent of Field Operations, sued in his individual and official capacity for the conduct, misconduct, lack of training and supervision, negligence and damages hereinafter asserted and claimed. On information and belief, Vasquez failed in his duty to supervise, evaluate, train, monitor, assign and/or discipline agent Sánchez-Méndez, and Officers 1 thru 10.

2.5    Defendant HECTOR M. FIGUEROA TORRES, is the Commanding Officer of the Tactical Operations Unit, sued in his individual and official capacity for the conduct, misconduct, lack of training and supervision, negligence and damages hereinafter asserted and claimed. On information and belief, Figueroa failed in his duty to supervise, evaluate, train, monitor, assign and/or discipline Sánchez-Méndez, and Officers 1 thru 10.

2.6    Defendant JOHN DOE is the Commanding Officer of the Specialized Tactical Operations Unit, sued in his individual and official capacity for the conduct, misconduct, lack of training and supervision, negligence and damages hereinafter asserted and claimed. On information and belief, John Doe failed in his duty to

supervise, evaluate, train, monitor, assign and/or discipline agent Sánchez-Méndez, and Officers 1 thru 10.

2.7    Defendant Miguel Mejías-Cruz is the Regional Director of San Juan, sued in his individual and official capacity for the conduct, misconduct, lack of training and supervision, negligence and damages hereinafter asserted and claimed. On information and belief, Miguel Mejías-Cruz failed in his duty to supervise, evaluate, monitor, assign and/or discipline agent Sánchez-Méndez, and Officers 1 thru 10.

2.8    Defendant Agent Sánchez-Méndez, is a citizen of the United States, sued in his personal and official capacity, and as a police officer of the Puerto Rico Police Department, he negligently and without regard for human life, caused grave physical injuries to plaintiffs, as well as severe mental and emotional suffering. He is identified in the photograph attached hereto as **Exhibit A**. His first name is unknown and will be substituted according to the discovery.

2.9    Defendants Officers 1 thru 5 are citizens of the United States, sued in their personal and official capacity, and as police officers of the Puerto Rico Police Department. They negligently and without regard for human life, caused grave physical injuries to plaintiffs, as well as severe mental and emotional suffering. They are identified in the photograph attached hereto as **Exhibit B**. Their identities are unknown, and their names will be substituted according to the discovery.

2.10    Defendants officers 6 thru 10 are citizens of the United States, and as police officers of the Puerto Rico Police Department, negligently and without regard for human life, caused grave physical injuries to plaintiffs, as well as severe mental and emotional suffering. They were the officers that negligently fired tear gas at plaintiffs

during the events stated below. Their names are unknown and will be substituted according to the discovery.

2.11   Defendant JIM ROE is a citizen of the United States and was responsible for the supervision, training, tactical control of the police officers dispatched to the field.  Acting under color of law Defendant JIM ROE violated the Constitutional rights of plaintiffs under the First, Fourth, Fifth, Tenth and Fourteenth Amendments of the Constitution of the United States, the Civil Rights Act of 1871, 42 USC §1983; and the Constitution and Laws of the Commonwealth of Puerto Rico.

2.12 Defendants are sued in their personal and official capacities and all defendants are joint and severally liable to plaintiffs for all claims and relief sought in this complaint as they caused damages to plaintiffs while acting under color of law.

2.15   All unknown defendants will be substituted and served process as soon as their names are known.

### III.    FACTS

3.1    June 30th, 2010 was the last day of the legislative session held by the Legislature of the Commonwealth of Puerto Rico. Among the several matters under consideration, the Legislature had to approve Puerto Rico's proposed Government budget. Prior to this date, the Senate's President, Hon. Thomas Rivera Schatz, had issued an order closing the Legislature's galleries, which prevented access to all public and members of the press to the legislative discussion about the impending matters. On June 30th, 2010, even though the press was allowed to the galleries, its gates remained closed to the general public.

3.2    As backdrop to the events further stated below, the students from the University of Puerto Rico, which had been on strike protesting a tuition increase, convened a demonstration for that day, June 30th. Community leaders and labor organizations also summoned the general public to protest against Law 7 of March 9, 2009, officially named "Special Act Declaring a State of Fiscal Emergency and Establishing Integral Stabilization Plan to Save Puerto Rico's Credit", also known as "Law 7", which resulted in the layoff of thousands of public employees.

3.3    In an exercise of their civil rights of freedom of speech and association, plaintiffs Peña and E.R.P. arrived at the Capitol building on or about 4:30 p.m., in order to peacefully voice their indignation against the undemocratic measures taken by the Legislature's majority, such as the galleries' lockout, and to show their support to the causes advocated by participants in the protest.

3.4    The demonstration took place at the north Plaza of the Capitol Building, which is a recognized traditional public forum. As a matter of fact, throughout Puerto Rico's history this Plaza has been used for gatherings and protests by political and labor organizations, environmental groups, religious congregations (such as "Clamor a Dios", which holds an annual gathering), and other groups from civil society. American Flag Day supporters were the most recent group congregated at the Capitol's plaza.

3.5    Approximately at 6:45 p.m., Peña and E.R.P. were standing to the right of the Capitol Building stairs in a parking area protesting and singing slogans with other participants, in front of a line of officers from the Tactical Operation Unit. Meanwhile, Police Officer 1 approached the demonstrators gathered at that place, and using a megaphone, advised them that they had to move. In a matter of seconds, and

without any negotiation or discussion, Police Officer 1 following orders from defendant Figueroa-Sancha, Rosa-Carrasquillo, Vásquez, Mejías-Cruz and/or Figueroa-Torres, instructed the Tactical Operation Unit to unleash an unfettered and vicious attack upon the protesters.

3.6     The order to activate the Tactical Operation Unit against the protesters had no other intention but to suppress the peaceful protest carried out by the plaintiffs. In fact, before the Tactical Operation Unit was activated, several observers from the Puerto Rico Bar Association attempted to negotiate with the police officers in order to prevent any incident of violence. However, the police officers in charge of the Tactical Operation Unit opted to ignore the observers' approaches and proposals which were intended to guarantee the safety of the protesters.

3.7     Minor E.R.P, who at the time was 17 years of age, was peacefully standing among the protesters, when Agent Sánchez-Méndez, raised his 36" riot baton (way above his helmet) and struck her right on the head, close to her right temple, causing severe trauma and injury. Peña, who was also standing peacefully, was severely hit, also on the head, by Officer 2. Neither Peña, 5'1", nor E.R.P., 5'6", posed any threat to the police officers. These aggressions were a clear violation of the police regulations regarding the use of the police baton.

3.8     Also, at the same time that this aggression against the plaintiffs was taking place, police officers indiscriminately shot a highly toxic form of tear gas against the crowd, known as "CN Tear Gas". As a consequence, both Peña and E.R.P felt suffocated by the tear gas inhaled, and suffered reparatory discomfort for days.

3.9    While E.R.P. lay helpless on the ground, she was kicked by Sánchez-Méndez, and Police Officers 2, 3, 4, and 5 hit her again with their batons.   In the commotion, Peña threw herself on top of her daughter to protect her from another strike from these officers. Subsequently, Peña received a myriad of kicks and hits on her back from Agent Sánchez-Méndez, and Officers 2 thru 5, while lying on the floor on top of her daughter. During this ordeal, the agents ripped off a patch of E.R.P's hair.

3.10   Agent Sánchez-Méndez dragged E.R.P. by one of her feet approximately ten feet away from where she was originally located. Peña attempted  to reach her daughter, but Agent Sánchez-Méndez grabbed her by the throat and threatened her with his baton. Immediately Agent Sánchez-Méndez, pepper sprayed her directly into her eyes. E.R.P. was also pepper sprayed by this agent. Agent Sánchez-Méndez, and Officers 1 thru 5 belong to the Specialized Tactical Unit and/or to the Tactical Unit Division, directed by Defendant John Doe and Defendant Hector M. Figueroa.

3.11   Peña felt pain throughout her body, could not breath, felt an urge to vomit, and collapsed on a nearby lawn. She lost sight of her daughter, and was deeply worried. A young woman carried Peña to a nearby site. There she reunited with her daughter, who was also helped by another woman. They were crying and visibly shaken, beaten and injured. Both of them received first aid services from a paramedic.

3.12   On July 1st, 2010, Betty Peña visited her doctor, Dr. Elba López. She suffered chest palpitations, suffered from a severe irritation from nose to lungs, and had a head trauma in her right parieto-occipital area. Dr. López ordered an EKG, and prescribed Peña albuterol and prednisone.

3.13   E.R.P. was also examined by Dr. Elba López, who suffered a severe headache, head trauma, right arm trauma, a right elbow abrasion, and a face abrasion. Dr. López ordered x-rays and prescribed cataflan 50 mg to E.R.P.

3.14   Defendant Figueroa-Sancha publicly admitted that he had been from the very beginning at the Capitol Building and that all actions taken by the Police were under his direct and express authorization. In fact, Defendant Figueroa-Sancha ordered the Tactical Unit and the Special Tactical Unit to line up inside the Capitol building well before the demonstrators arrived, in violation of the police regulations which establish that these units should be activated only when public safety is in jeopardy. Further, the Special Tactical Unit must be activated, if the Tactical Unit cannot contain the situation. Defendant Héctor M. Figueroa, as Commander of the Tactical Unit violated these regulations, which ultimately was the proximate cause to plaintiffs' violation of civil rights. Defendant John Doe, as Commander of the Specialized Unit violated these regulations, which ultimately was the proximate cause to plaintiffs' violation of civil rights.

3.15   Further, taken into account that defendants admittedly were at the Capitol building before the demonstrators arrived, Defendants Figueroa-Sancha, Rosa-Carrasquillo, Vasquez, Figueroa and Mejías-Cruz failed to establish a perimeter in order to protect the demonstrators and to ensure the peaceful exercise of their rights to freedom of expression, assembly and association. The abrupt and unjustified decision taken by Figueroa-Sancha, blindly followed by Defendants Rosa-Carrasquillo, Vasquez, Figueroa and Mejías-Cruz to (1) allow all the officers to illegally hit demonstrators with their batons in areas over their shoulders (raising their batons over

their helmets), to allow these officers to (2) viciously attack members of the press and
defenseless persons, such as plaintiffs and other demonstrators, to (3) allow Officers 1
thru 5 the unreasonable and unwarranted use of pepper spray upon the
demonstrators, particularly on plaintiffs, to (4) allow Officers 6 thru 10 the
unreasonable and unwarranted use of tear gas upon the demonstrators, particularly on
plaintiffs,  (5) to fail in their screening and monitoring by improperly allowing officers
such as Lieutenant Juan D. Vargas to participate in this operation, an officer with
twenty-five administrative claims filed against him, who unholstered his gun and fired
several rounds, and (6) to improperly allow officers to partake in these operations
without visible identification with absolute impunity, were the proximate cause of the
complete havoc and disarray caused by the police, which resulted in violation of
plaintiff's constitutional rights.

3.16   On 2007, in response to several incidents of police abuse, including
cases of citizens that have been killed by police officers, the then Governor of Puerto
Rico formed an external committee directed to evaluate the problem of police violence
and corruption within the Puerto Rico Police Department. The committee concluded
that there was a pattern of violation of civil rights by members of the police. The
committee issued a series of recommendations geared to prevent future incidents of
police violence against citizens and directed to improve the disciplinary system within
the Puerto Rico Police Department.

3.17  Figueroa-Sancha, Rosa-Carrasquillo, Vázquez, Mejías-Cruz and/or
Figueroa Torres have willfully disregarded and failed to implement the

recommendations made by the committee directed to correct the culture of violence within the police and to prevent incidents of police abuse.

3.18   Figueroa-Sancha, Rosa-Carrasquillo, Vázquez, Mejías-Cruz and/or Figueroa Torres have failed to establish protocols on the use of force, on the use of chemical agents (pepper spray and tear gas), and on riot police and crowd control policies. Moreover, the Puerto Rico Police Department, under the direct command of Figueroa-Sancha, has no catalogue of  existing written directives and orders governing police action.

3.19   In fact, at all times material to this complaint, the Puerto Rico Police Department has been using CN gas, which is a highly toxic form of tear gas. The CN Gas is generally no longer in use by police forces in the United States because of its toxicity.

3.20   A recent report issued by the American Civil Liberties Union concluded that, under the command of José Figueroa-Sancha, the administrative complaint process available within the Puerto Rico Police Department to investigate and prosecute incidents of police abuse is completely ineffective. According to its preliminary findings, the complaint process is characterized by: 1.  Excessive delay in resolving the excessive force complaints; 2. Failure to interview witnesses of police abuse, including civilian bystanders and other officer witnesses to the incident; 3. Refusal of the officers to initiate and process complaints by civilians; 4. Failure to follow up complaints; 5. failure to disarm officers involved in excessive force incidents; 6. Swift re-arming of officers following incidents; 7. Pro-Forma evaluations; and 8. Lack of attention to repetitive abusive conduct.

3.21   The problems in the complaint process adopted by José Figueroa-Sancha as Superintendent of the Puerto Rico Police Department, have led to a culture of impunity within the police force that ultimately encourages and stimulates police abuse and violence, such as the incident narrated in this complaint.

3.22   In fact, immediately after the event narrated in the complaint, the Governor of Puerto Rico, Hon. Luis Fortuño-Burset, personally ordered Figueroa Sancha to conduct an investigation with regard to the events of police abuse described herein. Also, the Governor of Puerto Rico showed special interest and concern to the particular case of the plaintiffs in this action. However, no investigation has been carried out whatsoever and no administrative measure has been imposed against the defendants.

3.23   The violence suffered by plaintiffs was a result of defendants Figueroa Sancha, Rosa Carrasquillo, Vasquez, Figueroa and Mejías-Cruz failure to adequately screen, train, supervise and discipline Agent Sánchez-Méndez, and Officers 1 thru 10. As a matter of fact, none of these officers have been disciplined. Defendants Figueroa Sancha, Rosa Carrasquillo, Vasquez, Figueroa and Mejías failed to detect Agent Sánchez-Méndez, and Officers 1 thru 10's propensity towards violence, failed to conduct the proper psychological screening, and have willfully disregarded the unrestricted use of anabolic steroids by the Specialized Tactical Unit, and Tactical Operation Unit.

3.24   All the injuries, damages, mental anguish and sufferings incurred by plaintiffs were caused by defendants' negligence, failure to act properly and failure to train, supervise and control police officers, procedures and operations.  All Defendants

acted under color of law in violating plaintiffs' civil, legal and constitutional rights and are therefore jointly and severally liable for said damages, injuries and constitutional violations.

    3.25   As further averted below, plaintiffs' damages are claimed as follows:

        a-     for Betty Peña Peña in an amount not less than $1,000,000.00;

        b-     for E.R.P. in an amount not less than $1,000,000.00;

        c-     past and future medical expenses in an amount not less than $20,000.00;

        d-     punitive damages in favor of both plaintiffs in not less than $2,500,000.00;

    3.26   At all times pertinent to this action, defendants' policy decisions have resulted in totally inadequate selection and training of Puerto Rico Police officers. The supervision and supervisory policies adopted by the Puerto Rico Police Department, fail to detect or punish incidents of unwarranted physical violence against citizens. They further fail to teach, train and prepare policemen to properly intervene with citizens who are attending group activities in which they are exercising their constitutionally protected rights.  They also fail to properly train and teach policemen to exert the high degree of self control that is required from them when intervening with citizens who voice their dissatisfaction about police interventions.  Defendants have ignored the deficiencies in the selection, training and supervision needs of policemen and the dangers posed by such inefficiencies to the safety and well being of law abiding citizens like the plaintiffs.

3.27    At all times and in all matters complained herein, defendants acted under color of the laws, statutes, ordinances, regulations, customs or usages of the Commonwealth of Puerto Rico.

3.28    Additionally, defendants acted with full knowledge they were violating plaintiffs' rights, as protected by the Constitution and laws of the United States, and did so willfully and maliciously. Alternatively, the defendants acted with fault or negligence.

3.29    The facts set-out in this complaint, constitute violations of plaintiffs' life, liberty, speech, assembly and privacy rights protected by the First, Fifth, Ninth, Tenth and Fourteenth Amendments to the United States Constitution and the Civil Act of 1871, 42 USC §1983.

3.30    The facts set-out in this complaint constitute violations of plaintiffs' rights under the Constitution of the Commonwealth of Puerto Rico, Article II, Sections 1, 4, 7 and 8, and the Civil Code of Puerto Rico of 1930, Article 1802 et seq., 31 LPRA §5141 et seq.

## IV.    FIRST CAUSE OF ACTION
### (Direct and Supervisory Liability)

4.1     The allegations contained in all preceding paragraphs are realleged as if fully incorporated herein.

4.2     The facts set forth in this complaint constitute violations of plaintiffs' First, Fourth, Fifth, Tenth and Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, 42 USC §1983.

4.3     Plaintiffs aver that supervisory defendants, Figueroa-Sancha, Rosa Carrasquillo, Vasquez, Figueroa, John Doe, and Mejías-Cruz, knew or should have

known of the aggressive behavior and propensity for violence of defendants 1 thru 10 and turned a blind eye to these problematic rogue police officers in failing to properly supervise them and take remedial action against them. This conduct by supervisory defendants constitute a reckless or callous indifference to plaintiffs' constitutional rights for which they are liable. All defendants are severally and jointly liable for their actions.

## V.     SECOND CAUSE OF ACTION
### (Failure to Take Remedial Action)

5.1     The allegations contained in all preceding paragraphs are realleged as if fully incorporated herein.

5.2     The facts set forth in this complaint constitute violations of plaintiffs' First, Fourth, Fifth, Tenth and Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, 42 USC §1983.

5.3     Defendants Figueroa Sancha, Rosa Carrasquillo, Vasquez, Figueroa, John Doe, and Mejías-Cruz were reckless and callously indifferent to the constitutional rights of plaintiffs Betty Peña Peña and E.R.P. because they failed to take remedial action against rogue police officers Agent Sánchez-Méndez, and Agents 1 thru 10. The supervisory defendants knew the propensity for violence of defendants Agent Sánchez-Méndez, and Police Officers 1 thru 10 and failed to send them to psychological evaluations, failed to order them to retraining, failed to remove them from preventive and control operations in order to prevent the civil rights violations they perpetrated on citizens as plaintiffs; and failed to suspend or dismiss them from

the Puerto Rico Police Department. All defendants are severally and jointly liable for their actions.

## VI.  FOURTH CAUSE OF ACTION
### (Failure to Properly Train and Retrain)

6.1    The allegations contained in all preceding paragraphs are realleged as if fully incorporated herein.

6.2    The facts set forth in this complaint constitute violations of plaintiffs' First, Fourth, Fifth, Tenth and Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, 42 USC §1983.

6.3    The supervisory defendants Figueroa-Sancha, Rosa-Carrasquillo, Vasquez, Figueroa, John Doe, and Mejías-Cruz were reckless or callous in the training and retraining of defendants Agent Sánchez-Méndez, and Police Officers 1 thru 10 because they failed to properly train and retrain them and this recklessness brought about the violation of plaintiffs Betty Peña Peña and E.R.P's civil rights. All defendants are severally and jointly liable for their actions.

## VII.  FIFTH CAUSE OF ACTION
### (Violations by Agent Sánchez-Méndez, and Officers 1 thru 10)

7.1    The facts set forth in this complaint constitute violations of plaintiffs' First, Fourth, Fifth, Tenth and Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, 42 USC §1983.

7.2    Agent Sánchez-Méndez, and Officers 1 thru 10's physical aggression and assault upon plaintiffs Betty Peña Peña and her daughter E.R.P. constituted a violation of their physical integrity and their dignity protected under the Constitution of

the United States and Constitution of the Commonwealth of Puerto Rico. All defendants are severally and jointly liable for their actions.

## VIII.  SIXTH CAUSE OF ACTION
### (Violations under Commonwealth of PR Constitution and Law)

8.1    The allegations contained in all preceding paragraphs are realleged as if fully incorporated herein.

8.2    The facts set forth in this complaint constitute violations of plaintiffs' rights by defendants under the Constitution of the Commonwealth of Puerto Rico, Article II, Sections 1, 4, 7 and 8 and the Civil Code of Puerto Rico of 1930, Article 1802, et seq., 31 LPRA §5141, et seq.  Supplemental jurisdiction over all claims arising under the Constitution and Laws of the Commonwealth of Puerto Rico arise from the same nucleus of operative facts.  28 USC §1367.

8.3    The facts alleged in this complaint state a claim under the Constitution of the Commonwealth of Puerto Rico, Article 1802, et seq., 31 LPRA §5141 for which defendants are liable.

8.4    As a direct result of the unlawful and negligent actions carried out by defendants, plaintiffs' rights under Article 1802 of the Puerto Rico Civil Code were violated. All defendants are severally and jointly liable for their actions.

## IX.  SEVENTH CAUSE OF ACTION
### (Punitive and Compensatory Damages)

9.1    The allegations contained in all preceding paragraphs are realleged as if fully incorporated herein.

9.2    The conduct displayed by Agent Sánchez-Méndez, and Officers 1 thru 10 and the willful, wanton and intentional disregard for the plaintiffs' life, dignity, physical integrity and civil liberties and constitutional rights and immunities showed by the supervisory defendants Figueroa-Sancha, Rosa-Carrasquillo, Vasquez, Figueroa, John Doe, Mejías-Cruz, mandate the imposition of punitive damages against all defendants in order to deter the conduct and procedures which caused so severe injuries and damages to plaintiffs.  In order to dispel impunity and serve as a deterrent, punitive damages should be imposed in an amount not less than $500,000.00 against each of the defendants, Figueroa Sancha, Rosa Carrasquillo, Vasquez, Figueroa-Torres, John Doe, and Mejías.

9.3    The negligence displayed by defendants renders them jointly and severally liable for compensatory damages to plaintiffs as follows:

> a-    for Betty Peña Peña in an amount not less than $1,000,000.00;
>
> b-    for E.R.P. in an amount not less than $1,000,000.00;
>
> c-    past and future medical expenses in an amount not less than $20,000.00;
>
> d-    punitive damages in favor of both plaintiffs in not less than $2,500,000.00;

### X.  EIGHT CAUSE OF ACTION
### (Attorney Fees and Prejudgment Interest)

10.1    The allegations contained in all preceding paragraphs are realleged as if fully incorporated herein.

10.2    The defendants are jointly liable to plaintiffs for all sums herein requested

as well as for all prejudgment and post judgment interest, costs and attorneys' fees as prescribed by law under 42 USC §1988..

10.4   Attorneys fees and interest are also due under the Commonwealth of Puerto Rico Law.

## XI PRAYER FOR RELIEF

Plaintiffs request the following relief from this Honorable Court:

A.  That this Honorable Court issue Declaratory Judgment declaring that defendants actions and/or omissions violate the First, Fourth, Fifth and Fourteen Amendments of the Constitution of the United States, the Bill of Rights of the Commonwealth of Puerto Rico Constitution.

B.  That this Honorable Court issue Injunctive Relief prohibiting defendants from using unlawful force against peaceful protests within the premises of the Capitol Building, in which plaintiffs may participate in the future.

C.  That this Honorable Court issue an injunction requiring the Puerto Rico Police Department to develop policies and procedures that will ensure the protection of protesters rights as recognized and articulated in the Constitutions of both the United States of America and the Commonwealth of Puerto Rico.

D.  That the court award compensatory and general damages against all Defendants and each of them for the plaintiffs, in an amount to be determined according to proof, as a remedy for physical injuries, mental and emotional distress, and discomfort that Plaintiffs have suffered.

E.  That the court award exemplary and punitive damages against all Defendants in an amount to be determined at trial, in light of Defendants' willful,

2nd Amended Complaint                                                   Page 22
Peña v. Figueroa Sancha, et als

wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiffs' civil rights.

F.   That the court award Plaintiffs their costs, expenses and reasonable attorney's fees.

G.   That the court grant such other and further relief as it may deem just and proper.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Respectfully submitted.

In San Juan, Puerto Rico this 29th day of June of 2011.

**CERTIFICATE OF SERVICE**:  I hereby certify that copy of this motion has been electronically filed on this date with the Clerk of the Court using the CM/ECF system.


 s/ HARRY ANDUZE MONTAÑO
HARRY ANDUZE MONTAÑO-114610

s/ JOSE A. MORALES BOSCIO
JOSE A. MORALES BOSCIO-220614

1454 Avenida Fernández Juncos
San Juan PR  00909
Tel.    (787) 723-7171
Fax    (787) 723-7278
E-Mail handuze@microjuris.com
E-Mail jmoralesb@microjuris.com


For:
The American Civil Liberties Union
Of Puerto Rico


                                        S/ JOSUE GONZALEZ-ORTIZ
                                        JOSUE GONZALEZ-ORTIZ- 221808
                                        Staff Attorney

2nd Amended Complaint                                                Page 23
Peña v. Figueroa Sancha, et als

E-Mail jgonzalez-ortiz@aclu.org

WILLIAM RAMIREZ-HERNANDEZ, Esq.
Executive Director
E-Mail wramirez@aclu.org

American Civil Liberties Union
Of Puerto Rico
Union Plaza, Suite 1105
416 Ave. Ponce de León
San Juan, Puerto Rico, 00918
T. 787-752-8493
F. 787-753-4268